# **EXHIBIT A**

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

**ORDER FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE**

**CASES ARISING FROM HURRICANE IDA**

    This court is implementing this INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM DISASTERS.

    These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to all cases involving first-party insurance property-damage claims arising from Hurricane Ida ("Hurricane Cases"). If any party believes that there is good cause to be excused from any provision of the Disaster Protocols, in whole or in part, that party may raise the issue with the presiding Magistrate Judge.

    Within 45 days after the last-responding defendant's submission of a responsive pleading or motion (or, if falling on a later date, 45 days from an Order denying a timely motion to remand), the parties must provide to one another the documents and information described in the Disaster Protocols for the relevant time period. This obligation supersedes the parties' obligations to provide initial disclosures under FRCP 26(a)(1). The parties must use the documents and information exchanged under the Disaster Protocols to prepare the FRCP 26(f) discovery plan.

    The parties' responses to the Disaster Protocols must comply with FRCP 26(e) regarding the duty to supplement and with FRCP 26(g) regarding certification of responses. As stated in the Protocols, this Initial Discovery is not subject to objections, except on the grounds of attorney-client privilege or work-product protection. Documents or information withheld based on an attorney-client privilege or work- product protection claim are subject to FRCP 26(b)(5) and the requirements of CMO No. 1.

INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE

PROPERTY DAMAGE CASES ARISING FROM HURRICANE IDA

PART 1: INTRODUCTION AND DEFINITIONS.

A.  Definitions. The following definitions apply to cases under the Disaster Protocols.

  1.  Claimed Loss. "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

  2.  Event. "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

  3.  Identify (Natural Persons). When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

  4.  Identify (Non-Natural Persons or Entities).  When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address.  Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

  5.  Insurer.  "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

  6.  Insured. "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

  7.  Loss. "Loss" means damage to the Property caused by the Event.

  8.  NFIP Claim. "NFIP Claim" means a claim the Insured asserts in the litigation for coverage under a National Flood Insurance Program insurance policy.

2

9. Other Insurance. "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

10. Policy. "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

11. Property. "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

B. Instructions.

1. The relevant time period for this Initial Discovery begins on the date immediately before the Event (August 29, 2021) and ends 15 days prior to mediation, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below. The first disclosure is due 45 days from the date the defendant files responsive pleadings or the Court denies a timely file motion to remand. A supplemental disclosure must be made 15 days prior to the mediation.

2. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection. Documents withheld based on a privilege or work-product protection claim are subject to FRCP 26(b)(5). A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court.

3. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

4. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to FRCP 26(e) on supplementation and to FRCP 26(g) on certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

5. This Initial Discovery is subject to FRCP 34(b)(2)(E) on the form of production.

6. This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

7. Within 14 days after the entry of this Order, the Parties will meet and confer on the format (e.g., TIFF/text, searchable pdf, or Excel) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent an Order of the Court, nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow for such.

PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

A. Timing. Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 45 days of the denial of a timely motion to remand if that date is later.

B. Information to be produced by the Insured:

1. A description of the Insured's ownership or other interest in the Property.

2. The address of the Property (or location of movable Property) on the date of the Event.

3. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefiting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

4. The identity of any current mortgagee or other known lien holder.

5. A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

6. A description/list of any payments received under the Policy relating to the Event. The source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss should be identified.

7. The identity of any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

8. The identity of the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

9. With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

    10.    The identity of the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

    11.    A general description, including the court and docket number, of any other lawsuits, if any, arising from the Event relating to the Property.

    12.    A general description of any known preexisting damage to the Property relating to the Claimed Loss.

    13.    A general description of any claims for property damage or lawsuits resulting from property damage in the past 10 years relating to the Property.

    14.    Details of any sale, transfer, or foreclosure of the Property after the Event.

C.    Complete and unaltered copies of the following documents to be produced by the Insured:

    1.    Documents relating to the Claimed Loss, including loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of or for Insured.

    2.    Proofs of loss for the Claimed Loss.

    3.    Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

    4.    Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

    5.    Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

    6.    Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

    7.    The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

    8.    Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

    9.    If there has been an appraisal under the Policy, documents relating to the appraisal process.

10. For NFIP Claims, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

11. For NFIP Claims, documents relating to an administrative appeal under 44 C.F.R. § 62.20.

12. Any other document(s) on which the Insured relies to support the Claimed Loss.

PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

A. Timing. Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 45 days of the denial of a timely motion to remand if that date is later. The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

B. Information to be produced by the Insurer:

1. If there is a dispute over coverage, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

(a) Any exclusions or exceptions, or other coverage or legal defenses;

(b) The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

(c) Whether there is also a dispute as to the value or amount of the Claimed Loss;

(d) Any other basis on which coverage was denied.

2. If there is a dispute over all or part of the valuation, an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

(a) The Insurer's description of the nature of the dispute;

(b) The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

(c) The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

3. Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

    4.       Any payments previously made under the Policy relating to the Event.

    5.       A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

    6.       Any other Event-related lawsuits filed for the Property or the Insured.

    7.       the identity of the adjuster(s) who handled the claim.

    8.       The identity of the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

    9.       The identity of the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

    10.     If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

C.      Complete and unaltered copies of the following documents to be produced by the Insurer:

    1.       The entire claim file maintained by the Insurer.

    2.       The complete Policy in effect at the time of the Event.

    3.       Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement.  This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

    4.       Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

    5.       Any other evaluations of the Claimed Loss.

    6.       Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

    7.       Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss.  This includes all written records, written communications, records

of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

8. The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

9. Proofs of loss for the Claimed Loss.

10. If there has been an appraisal under the Policy, all documents relating to the appraisal process.

11. Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

12. For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

13. For NFIP Write Your Own Claims, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

14. For NFIP Direct Claims, written communications exchanged between the Insured and FEMA claims-handling personnel referring to the Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

15. For all NFIP Claims, documents relating to the administrative appeal under 44 C.F.R. § 62.20.

16. Any other document(s) on which the Insurer relies to support its defenses.